Good morning. We have one case for this panel, and we appreciate Judge Harden sitting in with us to replace the judge who was recused. It's number 16-1977, Dowling v. Pension Plan for Salary Employees of Union Pacific Corporation and Affiliates, et al. Ms. Watkins and Mr. Fineman. Good morning, your honors. May it please the court, my name is Kelly Watkins. I represent the appellant in this matter, John Dowling. With the court's permission, I would request four minutes be reserved for rebuttal. This claim essentially involves a dispute regarding the calculation of Mr. Dowling's pension benefits under the pension plan of his former employer, Union Pacific. Mr. Dowling contends that his pension was incorrectly calculated, specifically one component of his pension benefit, the factor involving his final average compensation. He further contends that if it were correctly calculated under the plain and unambiguous terms of the plan, that he would be due additional pension benefits under the pension plan, and it would also implicate benefits under the supplemental pension plan offered by Union Pacific, which essentially is an unfunded deferred compensation plan. When you say the text supports you, to say it's plain and unambiguous is a little tough here because it requires a lot of parsing through. I'm not saying you may be wrong. I'm just saying that it's not so simple that one can easily look at it and say, amen. I grant you, Your Honor, that the plan itself is complex and dense. However, I believe if the court hones in on the key terms, which is the definition of final average compensation and another definition for separation from service, that those two terms are plainly defined and are indeed plain and unambiguous. In fact, even Union Pacific, I believe, takes the position that the plan terms are unambiguous. Judge Ditter said the same thing, but Judge Ditter also came to the conclusion that the plan administrator's interpretation was not an unreasonable interpretation of these plain and unambiguous terms. Isn't that the question before us? That is precisely the question. Of course, Mr. Dowling's position is that the interpretation or rather the execution or application of the terms as done by Union Pacific and as accepted by Judge Ditter contravene the express terms of the plan, specifically the definition of final average compensation and the date from which it is calculated. And to get there, the bottom line sort of comes down to when did he cease to be a capital C covered capital E employee? That is correct. So it was either 1997 or 2012? That is correct. And let's work backwards a little bit. Why don't we start with the conflict of interest point and then we'll work the statute of limitations and then we'll get down to the merits of the text. Okay. With the conflict of interest, Your Honor, that was presented as an alternative argument only if the plan would be deemed to be ambiguous and we get into the various factors set forth in Howley. It is one of several factors. We are not submitting that the conflict of interest changes the standard of review. We understand and accept that the deferential standard of review applies here. However, even under that deferential standard of review, the interpretation or the application must be reasonable. For the conflict of interest, that's just one of, I believe, six factors that come into play. We addressed it for that reason as an alternative argument, but it's certainly not our primary argument. The basis of the conflict of interest, if that is your question, I can expound on that a bit, is that even though the pension plan itself is a funded plan and actuarially, I may have mispronounced that word, but based on an actuary, it's not being paid straight out of the company's benefits. The supplemental plan, however, is not funded. The benefits under that plan do indeed come out of Union Pacific's general assets. So the conflict of interest is not just a simple application of this is a fully funded plan and the company has no financial interest in whether Mr. Dowling gets additional benefits or not. They certainly do, because in this case, the correct calculation of his final average compensation would take his benefits out of just simply the pension plan and put them into the supplemental pension plan, which does come directly out of their assets. What about the statute of limitations? I don't believe there's been a statute of limitations issue raised, or at least not pursued, by Union Pacific. But to address your question, Mr. Dowling did not apply for or begin receiving his pension benefits until 2012, and I don't believe that there's any dispute that we were timely in pursuing our disagreement with the calculation of those pension benefits. He was given several memos back in 1997, worksheets almost, as to this is what it would be or this is what it would be under this calculation or this calculation. But his pension benefits did not come into play until 2012, and that was the first time we could actually challenge that pension calculation. Let's go back to the merits where we started. Is total disability an absence under this plan? The short answer is no, I do not believe it is an absence under this plan. Throughout the plan, the term absence, including in Section 2.18, which Union Pacific relies on, speaks of absences in the context of individuals who remain employed. They may be on some type of leave of absence, but it doesn't terminate their status as an employee or as a covered employee. That's the key distinction. What about 2.67, though? 2.67 as the separation of service? Yeah, it says death, resignation, discharge, total disability, or any absence. That sort of cataloging under typical canons of construction would lead us to believe that the precursors to the phrase or any absence are all types of absence. Well, I would note that it doesn't say or any other absence, for one thing, and so I would submit to you that that sets forth a different category of events, which causes a separation of service. Otherwise, why would you need to put total disability in there as a definition of separation of service if it's an absence? I would also point out that the remainder of that phrase says any absence that causes him to cease to be an employee, and there is the key piece of the separation of service definition. If you have a separation from service, all of those events cause you to cease to be an employee. Not all absences cause you to cease to be an employee, and that is the key difference. Why did Dowling cease to be an employee, as you see it? Under the plan, he ceased to be an employee when he became totally disabled in 1997, in February of 1997. Is it true, though, under the plan that he was able to get certain benefits that accrued after 1997, that he was deemed – and he got the benefit of those things after 1997? He absolutely did. So from sort of an – maybe we shouldn't – maybe your answer is equity doesn't matter, but am I correct in understanding there's an aspect of your argument, which is that Mr. Dowling should get the benefits that accrue after 1997 without suffering the detriments that accrue after 1997? The answer is absolutely yes, and the reason for that is that that is how this plan is structured. He does – How do we know that? I guess your answer is it keeps bringing us back to the plain language of 2.35, that, you know, that's how we know it. You say read 2.35. Read 2.35 in conjunction with what we've just discussed under 2.67, which clearly defines the separation from service as occurring when someone suffers a total disability. At that point, the separation from service occurs, and he is no longer a covered employee for purpose of the plan. The reason he can take advantage of additional benefits accruing, or not even benefits, but additional pieces of benefits accruing after that date is because there is a special exception, but only for credited service. There is not an exception or any alternative definition for final average compensation. In credited service, however, there is a specific exception, specifically for the period of time during which someone is on total disability, which is acknowledged in that section, section 402C2, I believe, which is acknowledged in that section to make them not a covered employee. Why is section 2.18AC01 inapplicable here? Judge Ditter relied on that provision, the one dealing with compensation. The one dealing with compensation, yes. AC or A3? I believe it might be A3. A3C? A3C. A3C. The reason is that that provides a definition of compensation. It does nothing to change the date from which final average compensation is calculated. There are other reasons, including the fact that, again, gets back to the question regarding absence and the plan treating absences that do not cause a separation of service as a different category from total disability, which does cause a separation from service. In essence, I believe section 2.18 is a bit of a red herring in this case because the date from which final average compensation had been set early. There is nothing in the plan. I see I'm out of time. I'll complete this thought. No, you're fine. We're on our time. I'm sorry. You're on our time. You're fine. Okay, thank you. There is nothing in the plan that creates any parallel between the time during which credited service may be applied and the time during which final compensation for purposes of final average compensation must be counted. They're separate concepts. They're separate pieces of the formula for accrued benefit. That can also be seen looking at additional sections in Article VI, where if you go on, I believe it's sections 606 through 610 and actually continuing through the end of that article, there are a number of provisions that provide for enhanced benefits for certain employees. And those enhanced benefits almost always take the form of additional years of credited service. There's nothing in there that says those have to correspond with the same time period that final average compensation is calculated from. Before you sit down, and this will apply also to Mr. Freiman, let's see, I'm trying to construct a logic tree for the question, when do you cease to be a covered employee? And tell me if this is correct. You must be a disabled participant under 2.25. And if you're a disabled participant, you have a disability date. And I think people agree that the disability date is 97 under 2.26. Yes. The disability date, you have to have a separation from service and be totally disabled. Separation from service is 2.67, and I realize that Mr. Freiman claims that there's a delay of separation of service, and we'll deal with that. But you have to have a separation of service and be totally disabled. My understanding is that there's no disagreement, that there's a total disability here. Correct. So if you have a separation from service and a total disability, and therefore you have a disability date, then you have a separation from service. And a separation from service means you're no longer an employee. Is that correct? Correct. And if you're no longer an employee under 2.21, you no longer can be, you cannot by definition be a covered employee. That is correct. Covered employee is a subset of employee. Okay. When we get you back in rebuttal, we'll deal with the claim that somehow 2.67 delays separation from service, under 605 delays separation from service.  Thank you, Your Honors. Good morning, Your Honors. David Fryman, Ballard Sparr, for the appellees in this matter. Here's the key question. When does Mr. Dowling cease to be a covered employee? It is, Judge. Okay. But you can't look at 2.35 in isolation. Let's go back through, just see one by one. Am I correct in the decision tree that I laid out? Yes, but you need to then go to 6.05. I understand. We're going to get there. That's part of the decision tree. So it's not disputed that he's totally disabled. Is that correct? Correct. And to be totally disabled, he has to be a disabled participant under 2.25. Correct. And to be a disabled participant, he has to have a disability date under 2.26. And I think, is it agreed that the disability date was in 97? Yes, February 97. So then to have a disability date, you have to have either a separation from service and a total disability. It's separation from service that I think you claim 6.05 delays the separation of service from 97 to 2012. Correct. And it's a combination of 6.05 that says we're now going to push out for purposes of this benefit, to which he is entitled under Article VI, because that's what ultimately we're here about, the retirement benefit to which he is entitled, which is set out in Article VI. Now, at the outset, 6.05 deals with Article VI and Article VII, but not Article II, which is the article we're talking about. Is that correct? Well, Article II, of course, is the definitions that inform, all serve as to what that benefit is going to be, that pension benefit to which the participant is entitled. And 6.05 says we have a group of participants here that we're going to call disabled participants, by virtue of that decision tree that you just laid out in terms of a total disability. So he's now a disabled participant, and 6.05 says notwithstanding the separation of service that occurred in 97, we're going to treat for purposes of determining that pension benefit to which he's entitled, we're going to push that out, and we're going to look at this period during which he continues to be a disabled participant. And so now we have to look through that lens in looking at credited service and compensation, and then finally final average compensation, which are the components of that pension benefit. But you can't be a disabled participant unless you have a disability date, right? Yes. And you said to me that he is a disabled participant under 2.25, and he does have a disability date of 97 under 2.26. He does. And you can't have either of those unless you have a separation of service. It sort of works crosswise. Right, but he has a separation of service because under rules that allows him at that point, under the Treasury regulations, to commence a benefit, to commence his retirement benefits. But the plan goes on to say we're now going to treat him for purposes just of calculating the benefit as if that separation of service doesn't occur until a much later date. That is the date when he ceases to be a disabled participant. Is there a reason for that, or is it just an arbitrary rule? I think the reason for that is to give that disabled participant the benefit of those additional credited years of service and to deem compensation for those years because typically just before the disability or the last years of active employment are typically the highest earning years. In this case, you had somewhat of an extraordinary situation because you had a fairly high-level person who had some significant incentive compensation and had quite a long period of disability because he unfortunately became totally disabled at an early age. So he took advantage of, Judge Hardiman, as you mentioned, these other benefits that were available to him, including long-term disability benefits, which provided a much richer benefit than taking his retirement early, which absolutely was his right and was a wise decision on his part. He could have taken his retirement early, and those earlier years with the incentive compensation would have been counted or included, but then he wouldn't have gotten the additional years of credited service. So your response to my question of opposing counsel is that this isn't just equity, this is the way the plan operates. It is designed to, and to keep going from 6.15, Judge Ambrose, we then go to those components. And not only do we say we're going to treat him as if the separation of service occurred throughout that period of disability and being a disabled participant, but we then go to 4.02, which says, and this is key, when we get to 2.35, we're going to treat him as if he were a covered employee. There's two aspects to this. The way I think of it, I guess in my naive way, is sort of like attorney's fees when you have a Lodestar. You have the number of hours and your hourly rate. Here, the number of hours equates to the years of service. And you're saying, in effect, you can have an extension beyond a disability date of years of service. That doesn't necessarily affect the final average compensation. I would argue it does, and here's how it does. They all tie together. So we start with 6.05, since we're going to push out that separation of service. We've got 4.02. Hang with me. Theoretically, they're two separate things. Theoretically, they could be. You have to take one times the other, correct? Yes. Okay. One or two separate components, sure. Okay, got it. But 4.02 ties back to 6.05, this period of disabled participant, by saying we're going to treat him for purposes of this additional service as if he were a CAPC covered CAPI employee. And then we get to the compensation provision, what Judge Van Aske pointed to, 2.18A3C, which then ties back to 4.02, which says that for purposes of compensation, we're going to give or we're going to deem compensation, we're going to assume this person continued to receive that same base pay rate for that period. Now let's go back to 4.02, when we were treating him as if he were a covered employee for all that time that he got credited service under 4.02. That's for credited service, but where does that fit in with regard to final average compensation? Because that's how we're figuring out the compensation. We're using that same period. 2.18A3C is saying for any periods during which this participant, including a disabled participant, that's in the preface to 2.18A3C, when this disabled participant is being given credited service, we're also, for this same period, going to deem compensation at the base pay rate. So they're linked. They're related. And to say that that's unreasonable to read it that way. The only way you get there under 6.05 is if this contract is deemed to be ambiguous and you get some deference, I'm not sure how much, because perhaps there is a conflict of interest because of Schor and the other two employees who were on it. Forget that for the moment. Isn't the only way you get to where you want to get is if this contract is deemed to be ambiguous? I don't think so, Judge, because let me mention the Unisys case, which the appellant cited to. In that case, Judge Debra Boies mentioned that, you know, you can't read in intent unless there's some linguistic reference point or some objective manifestation of intent. Where in that case the plaintiff administrator was just saying, look, this is the way I saw this design. And the court said, no, wait a minute, the language doesn't support that. Let's stick with the language here because this is really a textual argument that's made on both sides. Under 6.05 when it talks about disability benefits, except as provided otherwise in Table 1 or 1209, which I guess are not relevant here, a participant who has a disability date shall continue to be credited with years of service. So we're talking about years of service so far. Where does 6.05 talk about average final compensation? It does because 6.05 is the general and then we work our way down. 6.05 talks about for a disabled participant, this is how we're going to treat this disabled participant for purposes of the retirement benefit. In 6.05 it says, as if his separation from service occurred on the date he ceases to be a disabled participant, then changes everything in terms of effectively he was a covered participant until he had a separation from service that occurs on the date when he elects to take benefits. That's right. And when you look at 4.02 and 2.18, 2.35. But you've denied already that he was a disabled participant as of 2-1-97. Right. And now we're taking that disabled participant and we're taking that entire period and we're treating him as if that separation of service occurred all the way through his period as a disabled participant. We're going to treat him as if he were a covered employee. In terms of his period of service, I agree with you. Right. And then 2.18 we're saying, and for that period of credited service, when we're treating him as if he were a covered employee, we're going to deem compensation. Why else would we deem compensation if not for purposes of that final average compensation? And if you look at 2.35b.4, right, it acknowledges that there's going to be this period of compensation that's going to be credited. But when you go to 2.35, when you talk about final average compensation, it's the 120 month calendar month period immediately preceding the last date on which he is a covered employee. That's it, covered employee. And I thought through this logic tree the way we went down, the argument you have to rely on is somehow 6.05, which covers credible years of service, somehow also includes final average compensation, which I don't see in the text of 6.05. And so separation of service under your opponent's analysis means he's no longer an employee. And if he's no longer an employee, he's no longer a covered employee. But 6.05 just talks generally about the benefit to which he is entitled. You need to go to 4.02 for service, and you need to go to 2.18 for compensation, and then you need to go to 2.35 for final average compensation. But 4.02 is credited service again. It is. Where does 4.02 or 6.05 deal with final average compensation? 4.02 doesn't. I grant you that. 4.02 is all about service. Where does 6.05 overrule 2.35? It doesn't overrule it. It says this is how we're going to treat a disabled participant for purposes of the retirement benefit, which is composed of service, credited service, compensation, and then finally final average compensation. There would be no reason for deeming compensation a 2.18 if it weren't for purposes of establishing compensation for this retirement benefit to which he's entitled. Regardless of whether we say it's ambiguous, there's a lot of lack of clarity here. Would you agree with that? I think to borrow from Ms. Atkins, it's complex and dense, that there's a number of steps here. There's a number of components. And there are provisions that are in your favor, and there are provisions that are in her favor, and there's some tension between them. And what I would say to that, Judge, is that's where we've got to remember our standard of review here. Before we go there, I mean, we know it's a deferential standard of review, but I'm curious to know, you know, this is a complicated plan, 200-plus pages. Is this a really unusual case factually? Is that why this seems unclear to me? Or does this sort of thing happen all the time with this plan? Maybe you don't have experience with this plan, but it just strikes me as odd that something like it doesn't seem that odd that somebody became disabled, and sometimes highly compensated people are disabled, just like people that receive less compensation become disabled. So why all the complexity here? I don't think it's unusual for employees to go out on loan to a disability. I think it is somewhat more unusual for somebody for this long a period and to be at that level where the taking out the service and the compensation may work against them as opposed to in favor of them. I think in most cases it probably works in their favor. Why? Because they're getting the benefit of that last pay rate, which is typically going to be their highest base pay rate, and incentive compensation is not going to necessarily be a huge difference. So the reason it works against Dowling is related to the 15 years, the length of the disability. Right, because he's just getting the base pay rate as opposed to those inclusion. When he was an active employee, the incentive compensation would be counted as well. Right. And he could have opted to get the benefit of that higher compensation, the incentive compensation, but the downside there is then he would have retired. He wouldn't have been able to collect all the LTD benefits. The LTD, and he wouldn't have gotten the additional years accredited service. That's right. So I see I'm out of time. I think it's important that we look at the deferential standard. Even in an ambiguous situation, even in a conflict situation, post-Glenn, it's still got to be arbitrary and capricious. Before you sit down, where does 6.05 deal with average final compensation? It deals with it by talking about the pension benefit to which the participant, the disabled participant is entitled. The service he's entitled. That for purposes of determining the pension benefit to which he is entitled, we are going to treat him as if his separation of service occurred on the date he ceased to be a disabled participant. So it's talking about the pension benefit, and a necessary component of that is compensation and final average compensation. That's the roadmap. Thank you.  I'll start with section 6.05, since that appears to be the hook on which Union Pacific bases its jump to basically change the definition of final average compensation. The short answer to your question, opposing counsel, is that section 6.05 does nothing to affect the definition of final average compensation. Not directly, but does it do so indirectly? It does not do so indirectly. Why not? What about this language, applied as if his separation of service occurred? The language reads, he shall be entitled to a pension under the other provisions of this article, article 6. Those provisions of article 6 applied as if his separation from service occurred on the date he ceased being a disabled employee. Article 6 sets forth the time from which, the time when a participant may take his pension benefit. Is article 6 about pension benefits? It is about the time when they may be paid, either on a normal retirement date, an early retirement date, a postponed retirement date, or in the case of a deferred vested benefit, still requires it to be either on one of those retirement dates. So it sets the time. Isn't article 6.05 dealing with disability benefits, not pension benefits? Well, that's an interesting point, Your Honor. I'd like to expound on that because it is titled disability benefits, but it does not provide a disability retirement benefit. In fact, it does just the opposite. It says you can only get your pension benefit after you cease to be a disabled participant. This is not a plan that is structured such that disability can result in qualifying for the pension. The benefit of disability that's provided in this plan is simply being able to accrue the additional years of credit of service. So you cease to be a covered employee when you have a separation from service? Correct. Now, if you deem the separation from service to occur on the date that you cease to be a disabled participant, why doesn't that then relate back to the computation of the final average salary? Because that totally eviscerates the specific definition of separation from service as occurring when total disability occurs. There would be no other purpose. But you continue to accrue credited years of service. Because of special rule providing an exception for the accrual accredited service while not a covered employee. There is a special exception set forth in the plan for that. There is no corresponding special exception set forth for the calculation of final average compensation. And in fact, the interpretation that is posited by Union Pacific would make the definition of separation from service as being triggered by total disability completely meaningless. They try to assert that separation of service must be defined as total disability because that would trigger some right to some type of disability retirement benefit. This plan doesn't provide that. This plan provides exactly the opposite. That you can only get your pension benefit when you otherwise meet the requirements of early retirement or normal retirement or postponed retirement. And you can only do that after your disability is over. So it makes no sense to on the one hand define separation of service as being a total disability only to then in section 605 say that it doesn't. There is only one purpose for total disability being defined to accomplish a separation from service so far as I can tell. And that is for the calculation of final average compensation. Thank you very much. Thank you to both counsels for presenting arguments and taking the matter under advisement.